And our last case for argument is Chavarria-Reyes v. Lynch. Mr. Singer. Good morning, Your Honors. My name is Matthew Singer from Novak & Macy, LLP, and I represent the petitioner, Jose Chavarria-Reyes. Mr. Chavarria's petition should be granted and this case remanded to the Board of Immigration Appeals. This appeal presents two jurisdictional questions and two questions on the merits, all of which should be resolved in Mr. Chavarria's favor. First, with respect to jurisdiction, there's the question that this Court asked both parties to address, which is whether the prison mailbox rule applies to petitions for review of immigration removal orders. On that point, the parties agree. The parties agree that the prison mailbox rule applies, the parties agree that Mr. Chavarria complied with it, and the parties agree that, therefore, the petition- Is there any disagreement among courts about that? With respect to the Ninth Circuit agrees, the Second Circuit agrees, the Fifth Circuit has had contradictory guidance in a case called Gergreis, which precedes the current Rule 25. Yeah, I'm not interested in anything that precedes it. Rule 25, A2C, does what it does. So maybe I should be more precise about my question. Is there any disagreement among courts about the effect of Rule 25, A2C? The Fifth Circuit, in a case called Navarro-Miranda, concluded that the prison mailbox rule did not apply. It relied on Gergreis, which was preceding Rule 25, and it didn't address the language. In a previous case, Smith v. Connor, the Fifth Circuit did say that the language of Rule 25 overturned Gergreis. Second, with respect to the other jurisdictional issue, the government argues that certain jurisdiction stripping provisions apply. But it's undisputed that the presence of a question of law under 8 U.S.C. section 1252, A2D, would restore this court's jurisdiction. And here, Mr. Chavarria presents two questions of law which not only assure this court's jurisdiction, but also warrant granting this petition. First, there was a fundamental problem with the proceedings in that the agency denied Mr. Chavarria his statutory and regulatory right to a reasonable opportunity to present evidence, and in particular, offered Mr. Chavarria no reasonable opportunity to present testimony in support of the essential elements of post-conclusion voluntary departure, which was the only form of relief that the IJ allowed him to seek. There's also a second serious problem, which is that the agency violated its own- That the immigration judge allowed him to seek. Are you contending that he sought pre-conclusion voluntary departure, but the immigration judge refused to consider the argument? No. What we're contending- Well, it's similar to my question to your predecessor. If the immigration judge blocks something that somebody wants to do, I understand that as a refusal, potentially a legal error. But when the immigration judge just doesn't do it on his own, the question is, what rule of law requires the IJ to do it on his own? And the answer to that question is INRI Cordova, which is a binding- No, that's not a rule of law. And if I understand- that is, it's not a statute, it's not a regulation. If I understand the Attorney General's position correctly, it's that no argument based on Cordova was ever made to the Board of Immigration Appeals. And so administrative remedies have not been exhausted. Is that correct or incorrect? We disagree. We disagree. We believe that the- I agree- Well, was an argument based on Cordova made to the Board of Immigration Appeals? No, no argument that specific- Now we have to figure out the consequence of that fact. At least you agree on the fact. I agree that INRI Cordova was not mentioned to the Board of Immigration Appeals. That is correct. Well, what was mentioned was a due process argument. And again- Well, as you must know, this circuit says that intoning the phrase due process doesn't constitute any legal argument at all. You have to identify concretely what the problem was, and you start with statutes, right, or you start with things like Cordova. So let me put the argument a different way. Was an argument made to the Board of Immigration Appeals of any concrete legal argument about why the immigration judge had to do this? With respect to INRI Cordova? We've already agreed that Cordova was not cited. Was there any other argument to the Board saying that for some legal reason the immigration judge had to raise pre-conclusion voluntary departure on his own? No. No specific argument was made. Then again- I thought your idea was that Cordova set forth a rule for the immigration judges. They're supposed to follow the rule. That's right. And the whole point of INRI Cordova is to establish a duty on the part of the immigration judge to inform an immigrant of the opportunity to apply for pre-conclusion voluntary departure. Again, Mr. Chavarria was pro se, and again, the whole point of INRI Cordova is that the IJA has a duty to inform immigrants and must notify them of potential forms of relief for which they are apparently eligible, including voluntary departure. Now, the agency in INRI Cordova framed it as a due process issue. That statement was as a result of due process. An essential part of due process is to inform petitioners of their opportunity to apply for pre-conclusion voluntary departure. And our position is that by mentioning due process, that Mr. Chavarria exhausted his administrative remedies as this court stated in Hamdan. The question is whether the board was put on notice of the issue, and we believe it was. But turning back to the first issue, which is the statute and regulatory reasonable opportunity to present evidence issue. The agency denied Mr. Chavarria his right to a reasonable opportunity to present evidence, and that issue certainly was exhausted. He was given no real opportunity to offer testimony on his own behalf regarding the essential elements of post-conclusion voluntary departure. And what the IJA did was unacceptable. The IJA conducted a cross-examination that focused on and elicited only two facts. That Mr. Chavarria is married to a United States citizen, and that he has four United States citizen children. And then the hearing, Mr. Chavarria's opportunity to present testimony concluded. There was nothing else. The IJA never asked any open-ended questions, never gave Mr. Chavarria a chance to support each of the elements of the relief that he sought. And he was never informed that his opportunity to present evidence was coming to an end. After the cross-examination by the IJA, the IJA immediately turned the hearing over to the government, which briefly described his misdemeanor criminal convictions and then issued a ruling. And on that record, on that one-sided record, it's not surprising what conclusion that the IJA came to. Now, the IJA and the board both criticized Mr. Chavarria for failing to demonstrate sufficient positive equities. And if you look at the transcript, when was he, when was Mr. Chavarria, a pro se petitioner, supposed to demonstrate positive equities that would support his claim for relief? He was never given that chance, and that is an error. Now, in similar circumstances, this court has repeatedly remanded where the agency has improperly limited testimony, improperly cut off. Counsel, I hope you appreciate, I will come back to the question, how did he limit testimony when there wasn't any presented? What we're dealing with and what I think we have to face head on is what are an immigration judge's duties to do things without being asked? And then what has to be done before the Board of Immigration Appeals to preserve for judicial review an argument that the judge didn't do enough? We're not dealing with something where the immigration judge refused to listen to testimony or refused to allow the alien to present evidence. In this context, in the context of a pro se person, the IJA never invited, never invited the petitioner to offer testimony. If I understand at least what the lawyer for the agency says, is that there were two continuances when your client said, I have a lawyer, I want to consult with him. And the immigration judge said, please, go consult with your lawyer and you and your lawyer can discuss what motions to make. And then at the third hearing, your client shows up without a lawyer and the immigration judge says, please present what you want to present. And your client then did not make this particular motion. That is not correct that the immigration judge said, please present what you want to present. That is not what the record in this case shows. What the record in this case shows is that the IJA asked a series of very targeted questions and then immediately turned the hearing over to the government. There is no, please present what you want to present statement in this record. And I see my time is up. Okay, thank you, Mr. Singer. Mr. Hurley? May it please the court, my name is James Hurley and I represent the Attorney General. Although this court has jurisdiction to determine its jurisdiction and jurisdiction to review questions of law and constitutional claims, this court should ultimately dismiss this petition because Mr. Chalmers Do you agree with Mr. Singer about the state of the law among the courts of appeals about Rule 25, etc.? The prison, we do. We concede that the prison mailbox rule applies in this case. No, I didn't ask what you conceded. I asked about the state of the law among the circuits. That every circuit that's considered it has ruled that Rule 25, A2C applies, except perhaps the Fifth Circuit is talking out of both sides of its mouth. Correct, that's accurate. Okay. I just want to understand what else is out there. Ultimately, this court should dismiss this petition because Mr. Chavarria-Reyes is a criminal alien who is appealing the non-reviewable denial of voluntary departure. And that denial was made as a basis of discretion. You didn't cite the Cordova case in your brief. But it says it commands, it's the Board of Immigration Appeals commanding the immigration judges to notify an applicant potentially eligible for voluntary departure of the voluntary departure possibility. That's correct. Why isn't that being done? We'll concede that that didn't happen in this case. Well, that's a rather serious omission, right? But if you look at the actual transcript of the hearings, again, Mr. Chavarria-Reyes said that he had an attorney. At the first June 2nd hearing, he said, there will be an attorney here. So the immigration judge gave a continuance and said, we'll talk about that with the attorney. At the July 9th hearing, he said, I have an attorney, but he won't be here until the 19th of July. So at that point, the immigration judge took the pleadings. And I believe it's- Look, the board commanded them to tell the immigrant that he's potentially eligible for voluntary departure. Now, why are the immigration judges simply paying no attention to what the Board of Immigration Appeals tells them? Well, if you look at what the IJ did in this case was that Mr. Chavarria-Reyes brought it up and said, well, if I have nothing else, I'll take voluntary departure. He brought up the issue of voluntary departure. But then he also said in the same sentence that I would rather stay here. So that kind of communicated to the IJ that he wasn't interested in that. What does that mean? Of course, he'd rather stay here. He didn't want to be deported. But given that he's not going to be allowed to stay here, he would prefer voluntary departure. Presumably, if he knew what it is, you know. He's supposed to be told. That's an option, right? He wasn't told. I don't get it. Well, in that context of that- Why don't they do what the Board of Immigration Appeals tells them to do? I think you'd have to look at the hearing transcripts in this case, though. Because, again, Mr. Chavarrias-Reyes maintained to the immigration judge the entire time that he had an attorney. At the third hearing, after the second continuance, the immigration judge delayed the hearing to the end of the day. And Mr. Chavarrias-Reyes said himself that he didn't know what was going on. He thought the attorney would be there. He maintained this- I don't see what that has to do with the Cordova opinion. Well, it goes to whether or not he had a fair hearing. And it's true that the immigration judge didn't spell out whether or not he had- I'm talking about spelling out. I'm talking about doing what the Board of Immigration Appeals told him to do. Well, I would agree that that didn't happen. Is there an immigration judge's manual, like the manual for district judges with a list of things to step through in each case and check off? There's a manual that exists. Is Cordova in that manual? Is the requirement of Cordova in that manual? I couldn't speak to that right now. There is a manual. I don't know if it's contained in there or not, but I couldn't speak to that right now. It certainly would help. All bodies of law are complex after a long time. We have this problem with district judges who don't go through all the steps required by Rule 11 to take a guilty plea, even though there is a checklist. A checklist sure do help. It would help in this case, too, but I think you'd have to look at the context of how the hearings proceeded. And to return to the point about exhaustion, Mr. Chabria-Reyes never brought that issue up to the Board of Immigration Appeals, so the specific Cordova argument wasn't exhausted. He may have absolutely no knowledge of it. That might be true. But he did have the opportunity. At the first June 2nd hearing, the immigration judge explained in detail how the proceedings worked and the opportunity for him to get an attorney, so he could have availed himself of that. And, in fact, he did. He said he would. So the immigration judge was more than fair in giving him multiple continuances, delaying the hearing until the end of the day on August 4th, the last day. Mr. Chabria-Reyes said, suggested voluntary departure, but then he also said he'd prefer to stay here. And ultimately, too, with this case, that whether or not it's pre-conclusion or post-conclusion voluntary departure is a distinction without a difference because ultimately it was denied as a matter of discretion. The immigration judge found that his criminal convictions outweighed the dearth of positive equities that he never presented. And it wasn't a question that he didn't have an opportunity. He had multiple continuances. He did submit a letter in June saying that he didn't want to leave and he wanted to go to school, but the immigration judge did allow him the opportunity to do that. And there was a colloquy after the immigration judge issued her decision that Mr. Chabria-Reyes said, well, if I get this information, would it help my case? And she said, well, you had the opportunity to do that. It's been two months of continuances. He had been detained for over three months and nothing had happened. So she asked him whether or not he would accept or would he apply for post-conclusion voluntary departure. He said he would. And then she did the weighing of the equities and she found as a matter of discretion that he didn't merit the post-conclusion voluntary departure. But, of course, he never had a chance to. He did, though. But he didn't know about this voluntary departure. I mean, he didn't know that the immigration judge had to direct him to that possibility. I would have to assume that he didn't. But, again, he had the opportunity to get an attorney. He didn't for whatever reason. Kind of what the immigration judge said, that I've continued your case twice. What does he mean opportunity to get an attorney? Would someone he'd hire pay for it? He could. I guess at the first hearing, he was provided a list of low-cost attorneys or pro bono attorneys. But at first he said, I have an attorney. He said, I'm going to get an attorney. There will be an attorney here. The next hearing he said, I've got an attorney, but he can't be here until the 19th. And then at the third hearing, he said, I don't know what's going on. I thought that they were going to be here. And then the immigration judge kind of pressed him on that point and said, what exactly have you done to get an attorney? He said, well, I appreciate the opportunity to look for one. I inquired about it. So at that point, it was obvious that he never had an attorney. And even though he was provided the opportunity to get one. So he had a, as far as the ability to present at this case, he had a full and fair opportunity to do that. And he didn't avail himself of that opportunity. If there are no further questions. Okay. Thank you, Mr. Hurley. Mr. Singer. Briefly, your honors. First, we don't raise an argument in this appeal about a right to an attorney. And what I haven't heard from the government and didn't hear just now is the defense of the actual conduct of the IJ at the removal hearing. And an explanation for why that two-page cross-examination was sufficient to preserve Mr. Chavarria's right to a reasonable opportunity to present testimony. If there are no further questions. Okay. Well, thank you very much, both counsel. You were appointed, were you not? I was. Thank you very much. And the court will be in recess.